# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# NORTHERN DIVISION

**LISA LOVE**                                                                                       **PLAINTIFF**

**V.**                              **NO. 3:21-cv-00045-BRW-ERE**

**KILOLO KIJAKAZI,**
**ACTING COMMISSIONER of the**
**SOCIAL SECURITY ADMINISTRATION**[1]                        **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition (Recommendation) has been sent to United States District Judge Billy Roy Wilson. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Wilson can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**I.     Introduction:**

On January 2, 2019, Lisa Love filed a Title II application for disability and disability insurance benefits and a Title XVI application for supplemental security

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration and is substituted as the Defendant in this action. Fed. R. Civ. P. 25(d).

1

income. *Tr. at 10*. In both applications, Ms. Love alleged disability beginning on August 20, 2018. *Id*. In a July 1, 2020 written decision, an administrative law judge (ALJ) denied Ms. Love's applications. *Tr. at 19*. The Appeals Council denied Ms. Love's request for review on December 21, 2020. *Tr. at 1-3*. The ALJ's decision now stands as the final decision of the Commissioner, and Ms. Love has requested judicial review.

For the reasons stated below, this Court should reverse the ALJ's decision and remand for further review.

## II.     The Commissioner's Decision:

At step one of the required five-step analysis, the ALJ found that Ms. Love, who was 54 years old at the time of the hearing (*Tr. at 61*), had not engaged in substantial gainful activity since the alleged onset date of August 30, 2018.[2] *Tr. at 12*. At step two, the ALJ determined that Ms. Love has the following severe impairments: degenerative disc disease of the cervical spine with radiculopathy, left trigger thumb, minimal carpal tunnel syndrome, degenerative joint disease of the left wrist, and brachial neuritis. *Id*.

---

[2] The ALJ followed the required five-step analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment (Listing); (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

After finding that Ms. Love's impairments did not meet or equal a listed impairment (*Tr. at 14*), the ALJ determined that he had the residual functional capacity (RFC) to perform work at the light exertional level, with the following additional limitations: (1) she can no more than occasionally reach overhead to the left, no more than occasionally reach overhead to the right, and no more than frequently handle with her left hand; (2) she can never climb ladders, ropes, or scaffolds; and (3) she can have no more than occasional exposure to excessive vibration. *Id*.

The ALJ next found that Ms. Love was unable to perform any of her past relevant work. *Tr. at 17*. At step five, the ALJ relied on the testimony of a Vocational Expert (VE) to find that, considering Ms. Love' age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that she could perform, such as production assembler and router. *Tr. at 18-19*. Therefore, the ALJ found that Ms. Love was not disabled. *Tr. at 19*.

**III.   Discussion:**

    **A.   Standard of Review**

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, in which case it must be affirmed. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might

accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

### B. Ms. Love's Arguments on Appeal

Ms. Love contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. She argues that: (1) the ALJ erred in failing to consider the "borderline age" situation, which occurs when a claimant is close to changing age categories in the Medical-Vocational Guidelines; (2) the ALJ failed to resolve a possible conflict between the VE's testimony and the Dictionary of

Occupational Titles; and (3) the appointment of a single Commissioner of the Social Security Administration (SSA) renders the ALJ's decision constitutionally defective, by violating the Separation of Powers Clause of the United States Constitution. The Court finds support for Ms. Love's first argument. Because the argument derives purely from SSA's regulatory scheme, no further review of the medical record is necessary.[3] However, the Court will address Ms. Love's constitutional argument, which has no merit.

### 1.     The ALJ erred in failing to provide an assessment of Ms. Love's borderline age situation.

Ms. Love was born on October 18, 1965. *Tr. at 238, 248*. The ALJ's decision was issued on July 1, 2020. *Tr. at 19*. On the date of the ALJ's decision, Ms. Love was 3.5 months shy of her fifty-fifth birthday. A claimant's age is important at step five, when the Medical-Vocational Guidelines, or "Grids," are applied to determine whether the claimant can perform work in the national economy.[4]

---

[3] Ms. Love asserted that she had pain in her wrist and neck, which required treatment and limited her ability to function in a workplace. The ALJ found her conditions to be moderate, and so assessed correlating limitations in the RFC. See *Noerper v. Saul*, 964 F.3d 738, 741 (8th Cir. 2020) ("Although our detailed discussion is targeted, we have considered the claimant's arguments and the record as a whole as to all of her impairments and their cumulative effect on her limitations.").

[4] *Phillips v. Astrue*, 671 F.3d 699 (8th Cir. 2012) explains the use of the Grids:
> The medical-vocational guidelines, or grids, "are a set of charts listing certain vocational profiles that warrant a finding of disability or non-disability." *McCoy v. Astrue*, 648 F.3d 605, 613 (8th Cir. 2011) (citing 20 C.F.R. Part 404, Subpt. P, App. 2). The grids come into play at step five of the analysis, where "the burden shifts to the Commissioner to show that the claimant has the physical residual capacity to perform a significant number of other jobs in the national economy that are consistent with her impairments and vocational factors such as

5

When a claimant is within a few months of reaching a higher age category, the Grids are not applied mechanically, and the ALJ must acknowledge consideration of the claimant's borderline age. *Id*. At 54 years old, Ms. Love was in the Closely Approaching Advanced Age category, but at 55, she would fall into the Advanced Age category.[5] This is significant. Based on the Grids, Ms. Love was "not-disabled" in the younger age category, but considered "disabled" in the older age category. 20 C.F.R. Part 404, Subpt. P. App. 2 § 202.04. The Commissioner admits Ms. Love's borderline age status. *Doc. No. 16 at p. 16*. The ALJ should have discussed Ms. Love's borderline age situation and explained why he applied the younger age bracket. See *Lewis v. Comm'r of Soc. Sec.*, 666 F. Supp. 2d 730, 738 (E.D. Mich. 2009) ("Generally, courts hold that a person within six months of the next higher age category is considered 'borderline.'").

In *Phillips v. Astrue*, 671 F.3d 699 (8th Cir. 2012), the claimant was four months shy of her 55th birthday, and the ALJ failed to discuss her borderline age status. Like Ms. Love, the claimant in *Phillips* would have been disabled at the

---

age, education, and work experience." *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001). "If the ALJ's findings as to RFC, age, education, and work experience fit any of the combinations of those criteria contained in the Tables in Appendix 2 to Part 404, then the ALJ must reach the conclusion (either 'disabled' or 'not disabled') directed by the relevant Rule or line of the applicable Table." *Reed v. Sullivan*, 988 F.2d 812, 816 (8th Cir. 1993).

*Id.* at 702.

[5] See http://www.ultimatedisabilityguide.com/grid_rules.html.

Advanced Age bracket. The court reversed, holding that the ALJ erred by not discussing the borderline situation.[6]

The ALJ in this case erred for the same reason. There is nothing in the record to suggest that the ALJ considered that Ms. Love was only 3.5 months from her 55th birthday, a legally meaningful factor in determining her eligibility for benefits. It is especially important for an ALJ to discuss borderline situations because a claimant has no control over when an ALJ's written decision will issue (and the date of the decision is determinative for Grids purposes); a few months on one side or the other of a birthday can be outcome determinative under the Grids. *Lacer v. Saul*, No: 4:19-cv-00969-DDN, 2020 U.S. Dist. LEXIS 124013 *25 (E.D. Mo. July 15, 2020).

### 2. The ALJ's decision does not violate the Separation of Powers Clause

Ms. Love argues vehemently that it is unconstitutional for an executive agency to be led by a single head who serves for a longer term than the President

---

[6] "To this end, we agree with the Commissioner that detailed findings in borderline situations are not necessary. However, it is this court's job to review whether substantial evidence exists to support the Commissioner's decision, and we simply cannot complete this review without some showing as to the Commissioner's consideration of applying the higher age category, which he indisputably is required to do." *Phillips*, 671 F.3d 699, 706. See also *Lucas v. Barnhart*, 184 F. App'x 204, 208 (3d Cir. 2006) ("Because the record does not contain factual findings relevant to the § 404.1563(b) inquiry into whether [the claimant] was entitled to consideration under Rule 202.06 as a borderline age case, we conclude that the SSA's decision that he is ineligible for benefits under that rule prior to his 55th birthday, July 15, 2003, is unsupported by substantial evidence."); *Kane v. Heckler*, 776 F.2d 1130 (3d Cir. 1985) (court reversed where ALJ failed to discuss the claimant's borderline age status); *Lacer v. Saul*, No: 4:19-cv-00969-DDN, 2020 U.S. Dist. LEXIS 124013, at *27 (E.D. Mo. July 15, 2020) (If a borderline age category exists, it is the ALJ's duty to consider the effects of the higher age instead of the chronological age).

and can only be removed for cause. Relying on *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (June 20, 2020), she asserts that the appointment of the Commissioner of SSA violated the Separation of Powers Clause and the ALJ's decision is unconstitutional.

Ms. Love lacks standing to bring this claim. She cannot show a nexus between the appointment of the SSA Commissioner and the ALJ's decision in her case.[7] "ALJs exercise their authority independent of and without involvement by the Commissioner. Thus, whether the [SSA] Commissioner is or should be removable at will by the President is irrelevant to the ALJ's decision that claimant is appealing. Claimant's injury—an adverse decision by an ALJ—is not fairly traceable to the Commissioner's conduct." *Cooper v. Saul*, No. 21-cv-38-CJW-MAR, 2021 WL 2908112, at *2 (N.D. Iowa July 9, 2021). See also *Brinkman v. Kijakazi*, No. 2:21-cv-00528-EJY, 2021 WL 4462897, at *2 (D. Nev. Sept. 29, 2021) ("Whether Plaintiff's claim is that the statutory limitations on the President's ability to remove the Commissioner is unconstitutional or that the Acting Commissioner was in office longer than permitted under statute, Plaintiff has not alleged any facts or provided any evidence in any form suggesting that when the ALJ denied her claim for Social Security benefits, the then-SSA Commissioner played any role whatsoever in that decision."); *Sean E. M. v. Kijakazi*, No. 20-CV-07295-SK, 2022 WL267406, at *4

---

[7] If Ms. Love's constitutional arguments had any merit, <u>all</u> cases – even those where benefits were granted – would be null and void. The Court doubts this is a desired outcome.

(N.D. Cal. Jan. 28, 2022) (In addressing a similar argument, the court agreed "with the weight of authority and finds that Plaintiff has no standing here.").

## IV.  Conclusion:

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence due to the ALJ's failure to discuss Ms. Love's borderline age situation.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further review.

DATED this 28th day of February, 2022.

_____
UNITED STATES MAGISTRATE JUDGE